**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | |
|---|---|
| DEAN W. WETZEL,<br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>        Defendant. | Case No. 4:13-cv-04070-SLD-JEH |

## Report and Recommendation

Now before the Court is the Plaintiff's, Dean W. Wetzel, Motion to Reverse the Decision of the Commissioner of Social Security (Doc. 11) and the Commissioner of Social Security's, Carolyn W. Colvin, Motion for Summary Affirmance (Doc. 16). The Plaintiff appeals from the denial of his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act. 42 USC § 405(g). This matter has been referred for a Report and Recommendation. Text Order entered March 11, 2014. The Motions are fully briefed, and for the reasons stated herein, the Court recommends that the Commissioner's Motion for Summary Affirmance be denied and the Plaintiff's Motion for Summary Judgment be granted.[1]

### I

On March 12, 2010[2], Wetzel filed a Title II application for disability insurance benefits. (AR 189). In his application, Wetzel alleged disability

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 8) on the docket.

[2] The Application Summary for Disability Insurance Benefits contained in the Administrative Record provided to the Court indicates a date of May 10, 2010. However, the ALJ's Opinion (AR 66), the

beginning on January 1, 2010. (AR 189). The claim was denied initially on September 1, 2010, and was then denied upon reconsideration on September 30, 2010 (AR 66). On October 20, 2010, Wetzel filed a timely request for hearing concerning his application for disability insurance benefits. (AR 66). An initial hearing was held before the Honorable Robert H. Schwartz (ALJ) on March 26, 2012 via video, during which time Wetzel was represented by an attorney. Following the hearing, the ALJ determined that Wetzel was not disabled prior to December 17, 2011, but became disabled on that date, thus, the ALJ's decision was partially favorable to Wetzel. (AR 76). Wetzel's request for review by the Appeals Council was denied on June 14, 2013, making the ALJ's decision the final decision of the Commissioner. (AR 1). Wetzel filed the instant civil action seeking review of the ALJ's decision on August 13, 2013.

## II

At the time he applied for benefits, Wetzel was a 48 year old married man living with his wife and two children in Stronghurst, Illinois. (AR 91, 191). He was a college graduate who had previously worked as a farmer, janitor, and golf course mower. (AR 92-93). In 1993, while working as a farmer, Wetzel was in a farming accident involving a tractor which caused him to suffer a traumatic brain injury (a right-sided parietal subdural hematoma) and a severe metatarsal fracture of the left foot. (AR 71, 666). The farming accident left him with right-sided symptoms, including right foot drop, though he was able to resume full-time work activity following the accident. (AR 71, 95). Then, in 2001, Wetzel developed grand mal tonic clonic seizures, and subsequently experienced seizures in 2004, 2008, and 2010. (AR 71).

---

Commissioner's Court Transcript Index (Doc. 8 at pg. 3), and the Plaintiff's Motion for Summary Judgment (Doc. 11) all indicate the date of March 12, 2010.

At the hearing before the ALJ, Wetzel testified that he drives as often as needed, usually to take his kids somewhere or to get groceries. (AR 92). He also testified that he plays golf twice a week, though he always uses a cart and falls at least once per hole because of his right foot drop. He testified that he does some dishes, laundry, uses a riding mower, plays games on the computer, and does some of the family's finances, though he makes several silly mistakes when doing the finances. (AR 105-06). He testified that his anti-seizure medication makes him drowsy so that he naps at least once a day, and that he has problems with his right knee because of an injury to it when he fell in August 2011. (AR 96, 98). He also testified that he has problems with the stairs in his house, and must use railings on both sides when using the stairs. (AR 104-05). As for his previous employment, Wetzel testified that when he worked as a janitor, he made a lot of incorrect decisions and he could not keep up with the other guys on the job because he could not walk normally. (AR 93). When he worked as a mower, he could not run a tractor the correct way because of his right foot and then could not go back to that work after the seizures in 2010. (AR 94). At the time of the hearing, Wetzel was an un-paid basketball coach. (AR 106-07). He testified that he does not get paid to coach and misses several practices because he does not feel good or just does not feel like going. (AR 107).

After listening to Wetzel's testimony, the ALJ posed his first hypothetical question to the vocational expert (VE) Ronald Malik (Malik): whether a person of Wetzel's age, education, and work experience would be able to perform his past work if he was restricted to lift, carry, push, and/or pull no more than 20 pounds occasionally, and no more than 10 pounds frequently, never climb ladders, ropes, or scaffolding, never crawl more than occasionally, avoid all exposure to hazards, like unprotected heights and dangerous machinery, and with moderately limited abilities to assume, understand, and carry out basic

3

instructions, sufficient attention and concentration to perform no more than simple, routine, and repetitive tasks on a sustained basis with only routine breaks, would be best in a socially restricted setting with moderate amount of social expectations, and avoid more than occasional contact with the general public and any tasks not involving sustained interaction with others. Malik responded that such a person would not be able to perform Wetzel's past work. (AR 111-12). Malik testified that, given the aforementioned limitations, the following were representative jobs that could be performed by such a person: fastener and publisher. (AR 112-13). The ALJ's second hypothetical assumed the same restrictions but included a limitation to never require walking over uneven terrain unless rarely, and use of the right hand for handling and fingering no more than frequently. (AR 113). Malik responded that fastener would remain available and the additional job of power screwdriver operator. (AR 113). The ALJ's third hypothetical further limited such a person's exertional requirements to sedentary work, and to lift, carry, push, and/or pull no more than 10 pounds occasionally, less than 10 pounds frequently, stand or walk no more than two hours in an eight-hour workday, and to keep all non-exertional limitations the same as in the first two hypotheticals. Malik responded that the jobs of sorter, prep clerk, and circuit taper were representative jobs. (AR 113-14). Finally, the ALJ asked Malik to assume that the individual can be expected to have marked limitation in the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms, marked limitations in the ability to maintain attention for extended periods, two hour segments. (AR 114). Malik responded to the ALJ's question of whether such limitations "change your

statement, or is there any work that that individual could perform?" with "No, your honor." (AR 114).[3]

### III

In his written Decision, the ALJ applied the standard five-step sequential evaluation process and ultimately found that Wetzel was not disabled prior to December 17, 2011, but became disabled on that date. The ALJ determined that Wetzel satisfied Step One because he had not engaged in substantial gainful activity during the period since his alleged onset date of January 1, 2010. (AR 68). At Step Two, the ALJ found that Wetzel suffered from the following severe impairments: history of traumatic brain injury, cognitive disorder, right foot drop, reduced right upper extremity strength, and seizure disorder. (AR 68). At Step Three, the ALJ found that the medical evidence did not establish that Wetzel's impairments met or medically equaled the severity of one of the listed impairments, either individually or in combination. (AR 68-69).

Specifically, the ALJ did not find that Wetzel met Listing 1.02 (Major dysfunction of a joint(s)), 11.02 (Epilepsy), or 12.02, paragraph C (Organic Mental Disorders). The ALJ did find mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. In reaching his conclusions under Step Three, the ALJ cited the evidence in the record that Wetzel was able to perform household chores, drive, attend appointments, go golfing, mow, garden, and coach basketball. (AR 69). While the ALJ noted that Wetzel's social skills were impaired, the ALJ explained that Wetzel did not demonstrate significant limitation of memory or understanding during the hearing, and he was fully

---

[3] It is unclear which part of the ALJ's question Malik answered in the negative.

oriented and free of thought disorder during multiple examinations. (AR 69-70). Also, the ALJ noted that while Wetzel would have problems consistently remembering and performing detailed tasks or instructions, he performed a relatively wide range of chores and leisure activities, and possessed sufficient cognitive and attentional abilities to perform simple, routine activities within the limits of his physical capabilities and requiring few social demands. (AR 70).

The ALJ found that Wetzel had the residual functional capacity (RFC) to perform sedentary work subject to the following limitations: the ability to lift, carry, push, and/or pull no more than 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for no more than a total of two hours during an eight-hour workday, never climb ladders, ropes, or scaffolding, can climb ramps and/or stairs, and crawl no more than occasionally, and avoid all exposure to hazards like unprotected heights and dangerous machinery. Additionally, his abilities to understand, remember, and carry out detailed instructions were moderately limited, and he had sufficient attention and concentration to perform no more than simple, routine, and repetitive tasks on a sustained basis with only routine breaks. Further still, he would do best in a socially restricted setting with a moderate limit of social expectations, and considering such limitation, he should avoid more than occasional contact with the general public and any tasks should not involve sustained close interaction with others. (AR 70).

In making his RFC determination, the ALJ explained that Wetzel's statements concerning the intensity, persistence, and limiting effects of the symptoms caused by his medically determinable impairments were not credible to the extent they were inconsistent with the RFC assessment. In making this determination, the ALJ relied upon Wetzel's medical records and Wetzel's own testimony. The ALJ specifically traced the progression of Wetzel's seizures since

2001, the use of Dilantin, Topamax, and Lamictal to control his seizures, Wetzel's work during the time of 2001 to the date of the ALJ's Decision, and the activities in which he engaged at home and outside of the home. He referenced a state agency physical evaluation done by Dr. Joseph Mehr when discussing his RFC finding, and he also referenced a state agency mental evaluation done by Dr. Leslie Fyans. (AR 72). The ALJ discussed Emily Axvig's[4] neuropsychology consult note and her medical source statement, as well as another neuropsychology note. (AR 73). The ALJ also discussed an assessment provided by Dr. Phillip L. Kent. (AR 73).

The ALJ particularly noted that Wetzel had worked steadily at light and medium jobs, and that the record did not support his representative's contention that his work had been accommodated. (AR 73). The ALJ discussed Wetzel's seizures and how those in 2004 and 2008 were probably related to missed medicine doses, and how his seizures were under control with medication. (AR 73). The ALJ rejected Wetzel's allegations about the limitations caused by his right foot drop and right hand weakness, noting that Wetzel did not use an assistive device for ambulation and had a grip strength of 5/5 in both hands and normal ability to grasp and manipulate objects. (AR 74). Finally, the ALJ summarized that there were inconsistencies in the record regarding Wetzel's symptoms, that the evidence was lacking to support his allegations as to frequency, intensity, and persistence, and that there were inconsistencies between his resultant limitations and his actual functioning, all of which prompted the ALJ to find that Wetzel's testimony was not fully supported by the record.

---

[4] Also identified as Emily Santi in the Administrative Record.

At Step Four, the ALJ determined that Wetzel was unable to perform any past relevant work.

At Step Five, the ALJ determined that Wetzel could perform a significant number of jobs that exist in the national economy prior to December 17, 2011. (AR 74-75). The ALJ considered Wetzel's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines 20 CFR Part 404, Subpart P, Appendix 2, and the opinion of VE Malik that a person with Wetzel's age, education, work experience, and RFC could perform the jobs of sorter, prep clerk, and circuit taper. (AR 75). However, as of December 17, 2011, Wetzel's age category changed (he turned 50), and after considering his age change, education, work experience, and RFC, the ALJ determined he was disabled. (AR 75).

## IV

Wetzel argues four points: 1) that the ALJ improperly assessed his RFC; 2) that the ALJ improperly weighed medical evidence; 3) that the ALJ erred when considering the opinion of the state agency psychologist; and 4) that the ALJ erred in mechanically applying the age categories in determining that Wetzel was a younger individual prior to December 17, 2011. The Court will address each argument in turn.

Pursuant to 42 USC § 405(g), the Commissioner's findings must be sustained by the Court if they are supported by "substantial evidence." 42 USC § 405(g). The entire administrative record must be reviewed for substantial evidence which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v Astrue*, 478 F3d 836, 841 (7th Cir 2007), quoting *Richardson v Perales*, 402 US 389, 401 (1971). The Court may not substitute its judgment for that of the ALJ. *Schmidt v Apfel*, 201 F3d 970, 972 (7th Cir 2000). Furthermore, the Court will not review the credibility determinations

of the ALJ unless the determinations lack an explanation or support in the record. *Elder v Astrue*, 529 F3d 408, 413-14 (7th Cir 2008). The ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning." *Carlson v Shalala*, 999 F2d 180, 181 (7th Cir 1993).

## A

Wetzel first argues that the ALJ improperly assessed his RFC by failing to include limitations relating to Wetzel's fatigue and right foot drop, by improperly conflating activities of daily living and activities performed in the workplace, and by failing to discuss the interplay between Wetzel's impairments of a physical and mental nature. Wetzel argues that the Commissioner attempts *post-hoc* rationalization in violation of the *Chenery* doctrine.[5] The Commissioner counters that the ALJ explained his reliance on the medical and non-medical evidence and that Wetzel fails to point to substantial medical findings that support his alleged need to further accommodate his fatigue and right foot drop.

As the Commissioner points out, the "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical evidence and other evidence." 20 CFR § 404.1527. The ALJ addressed Wetzel's reported symptom-related functional limitations and restrictions in conjunction with the medical and other evidence. The ALJ concluded his discussion of his RFC finding by stating, "The undersigned also does not fully accept the claimant's allegations due to inconsistencies regarding the claimant's resultant limitations and his actual functioning . . . ." (74). The actual functioning

---

[5] The *Chenery* doctrine forbids an agency's lawyers from defending the agency's decision on grounds that the agency itself did not embrace. *Parker v Astrue*, 597 F3d 920, 922 (7th Cir 2010), citing *SEC v Chenery Corporation*, 318 US 80, 87-88 (1943).

considered by the ALJ was that Wetzel played golf, did chores, could stay on task until finished, and that he had worked steadily at light and medium jobs. (AR 72, 73). The ALJ did not address Wetzel's testimony that he frequently fell when playing golf, and he did not address Wetzel's testimony that he missed several practices as a coach because he did not feel good or just did not feel like going. The ALJ noted that Wetzel testified to taking at least one nap per day, without further discussion on that point.

On the other hand, the ALJ did discuss Wetzel's testimony, did extensively cite to Wetzel's medical records which continuously referenced his right foot drop, did discuss his activities of daily living, and did discuss his mental impairments. As for the ALJ's alleged conflation of activities of daily living and activities performed in the workplace, the ALJ considered Wetzel's activities of daily living separately from his workplace experience. The ALJ noted that Wetzel worked steadily at light and medium jobs and stated that, "the record did not support the claimant's representative's contention that his work has been accommodated." (AR 73). Contrary to Wetzel's assertion that the ALJ failed to discuss the interplay between Wetzel's impairments of a physical and mental nature, the ALJ discussed the work Wetzel engaged in while noting the cognitive deficits Wetzel experienced since 1993. (AR 73). Certainly, the ALJ did not need to provide a complete written evaluation of every piece of testimony and evidence, but he did need to build a logical bridge from the evidence to his conclusion. See *Murphy v Colvin*, 759 F3d 811, 815 (7th Cir 2014), quoting *Schmidt v Barnhart*, 395 F3d 737, 744 (7th Cir 2005) (explaining that the ALJ must "build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence). Here, the ALJ did so. While the Commissioner comes close to violating the *Chenery* doctrine in attempting to defeat Wetzel's challenge to the ALJ's RFC assessment,

particularly in regard to Wetzel's right foot drop and fatigue arguments, ultimately, the ALJ sufficiently articulated his assessment of the evidence in reaching his RFC determination. See *Carlson*, 999 F2d at 181. Wetzel is not entitled to remand on the basis that the ALJ improperly assessed his RFC. While the ALJ's RFC assessment does not warrant remand, discrete parts of his discussion in reaching his RFC determination do, as discussed *infra*.

**B**

Wetzel next argues that the ALJ improperly weighed the medical evidence. In particular, Wetzel argues that the ALJ failed to properly evaluate the opinion provided by his counselor, Emily Axvig. 20 CFR § 404.1527(c) provides:

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

The listed factors include: 1) examining relationship; 2) treatment relationship, which in turn includes length of the treatment relationship and the frequency of examination, and the nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors brought to the Social Security Administration's attention. Id.

In rejecting Axvig's opinion, the ALJ stated, "The undersigned gives [Axvig's medical source statement] little weight where it is not well supported with citation to specific, objective evidence and it does not refer to specific functional limitations. Furthermore, this claimant's counselor is not an acceptable medical source for the purpose of this decision." (AR 73). Wetzel concedes that Axvig is not an acceptable medical source, but takes issue with the the ALJ's cursory explanation of why he gave Axvig's medical source statement little weight. Wetzel also argues that the ALJ partially misrepresented Axvig's

11

opinion itself because she did address specific and discrete areas of functioning and expressed her conclusion regarding the severity of Wetzel's impairment in each of the areas. The Commissioner argues that there is a distinction between what the ALJ must consider and what the ALJ must explain in the disability determination or decision.

The Commissioner specifically argues that the ALJ did not err in giving Axvig's statement little weight because the ALJ's decision as a whole discussed the medical evidence, state agency reviewing psychologist opinion evidence, and non-medical evidence that contradicted Axvig's opinion that Wetzel had marked and moderate limitations in his ability to sustain certain work activities. Notably, the Commissioner argues in her brief that the ALJ "implicitly" explained that Axvig's opinion was not entitled to more weight based on substantial evidence in the record. Though no discussion beyond that cited above is included in the ALJ's Decision as to why he gave Axvig's opinion little weight, the Commissioner's brief provides ample evidence from the record (and discussed in the ALJ's Decision) in support of the ALJ's evaluation of Axvig's opinion. However, what matters to this Court are the reasons that were articulated by the ALJ in his Decision, and not reasons set forth by the Commissioner in its Motion for Summary Affirmance. See *Kastner v Astrue*, 697 F3d 642, 648 (7th Cir 2012) (reiterating that under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace); *Jelinek v Astrue*, 662 F3d 805, 812 (7th Cir 2011). The ALJ did not explain that he gave little weight to Axvig's statement due to the other evidence he identified in his Decision.

If the Court were to find that the ALJ's decision to give Axvig's statement little weight was a correct one for the reasons stated by the Commissioner in her brief, the Court would be permitting the Commissioner to violate the *Chenery*

doctrine. It is beyond dispute that the Commissioner's findings must be sustained if they are supported by "substantial evidence." Moreover, it is beyond dispute that the ALJ must build a logical bridge from the evidence to his conclusion so that the Court can trace the path of the ALJ's reasoning. Here, the brevity of the ALJ's discussion regarding the little weight given to Axvig's opinion does not present enough to trace the path of the ALJ's reasoning in discounting Axvig's opinion. That is particularly so where during the hearing, the ALJ specifically referenced Axvig's medical source statement to question whether there was any work such an individual could perform. Significantly, if VE Malik's response is understood to be in response to that question (see Footnote 3 *supra*), his answer was no. (AR 114). Moreover, as Wetzel argues, the ALJ's Decision does not accurately state the extent of information provided by Axvig in the record. Though the statement was made on what could be called somewhat of a "form" statement, it discussed a number of areas and Wetzel's level of impairment as to each area.

Next, Axvig not only provided a medical source statement, but also her treatment notes. (AR 751-54). Also, the ALJ had "a duty to solicit additional information to flesh out an opinion for which the medical support [was] not readily discernable." *Barnett v Barnhart*, 381 F3d 664, 669 (7th Cir 2004). (AR 717). Finally, Axvig's opinion was consistent in some respects with Dr. Daniel Tranel's (who opined that Wetzel's return to gainful employment would be difficult) (AR 712) as well as Dr. Phillip L. Kent's (who opined that Wetzel was impaired in certain areas to the same extent that Axvig opined). (AR 823).

Wetzel also argues that the ALJ failed to properly evaluate the opinion provided by Dr. Kent for similar reasons as to why he argues Axvig's opinion was improperly evaluated. The Commissioner counters Wetzel's argument about the weight given Dr. Kent's opinion with the same reasons the

Commissioner provided regarding Axvig's opinion; namely, that the ALJ's decision to discount Dr. Kent's opinions is supported by the record, including treatment records and Wetzel's statements as discussed by the ALJ in his Decision. Once again, the ALJ did not explain that he gave little weight to Dr. Kent's statement due to the other evidence he identified in his Decision. Instead, the ALJ expressly stated that:

> Dr. Kent endorsed several moderate limits and one "marked" limit (ability to maintain attention for extended periods). The assessment is not entitled to significant weight where it is not well supported with citation to specific objective evidence and where it does not refer to specific functional limitations. Furthermore, Dr. Kent is not a treating source and his opinion is not entitled to controlling weight.

(AR 73). As with Axvig's opinion, the ALJ had a duty to solicit additional information in order to flush out Dr. Kent's opinion, particularly where he rejected the opinion because "it was not well supported with citation to specific objective evidence." Dr. Kent's treatment notes also appeared in the record, and as discussed above, his opinion was consistent to some extent with that of Axvig's.

While the Commissioner argues that Wetzel's challenge to the ALJ's decision about the weight to give Axvig's and Dr. Kent's opinions must fail because of the other evidence cited in the Decision, the Court cannot say that the ALJ properly engaged in weighing Axvig's and Dr. Kent's medical opinions as required under 20 CFR § 404.1527(c). The Court agrees with the Commissioner that there is a distinction between what the ALJ must consider and what the ALJ must explain in the disability determination or decision, but here, the ALJ gave such a brief discussion as to Axvig's and Dr. Kent's opinions that the Court is unsure of whether the ALJ considered the important evidence (i.e. what he was

required to consider).  An ALJ may not ignore entire lines of contrary evidence or selectively consider medical reports.  *Myles v Astrue*, 582 F3d 672, 678 (7th Cir 2009); *Terry v Astrue*, 580 F3d 471, 477 (7th Cir 2009).

## C

Wetzel's third argument is that the ALJ erred when considering the opinion of the state agency psychologist, Dr. Fyans.  Wetzel argues that Dr. Fyans proposed that Wetzel be limited to unskilled work that involved one- to two-step tasks, yet the ALJ did not explain if or why he rejected that limitation from his assessment of Wetzel's RFC.  Wetzel contends that the omission was not harmless error because two of the jobs identified by the VE Malik, document prep clerk and circuit taker, required second level reasoning as opposed to first level reasoning required for the completion of one- to two-step tasks.  The Commissioner disputes that the ALJ had to include in his RFC a restriction for Wetzel to one- to two-step tasks given the available medical evidence.  The Commissioner says that the ALJ could properly rely on VE Malik's testimony as substantial evidence in finding that Wetzel was capable of performing a significant number of jobs found in the national economy.  The Commissioner also argues that there is no evidence or precedential legal authority indicating that a limit to one to two-step tasks would preclude Wetzel from performing the jobs of prep clerk and circuit taper because they require second level reasoning skills.

The parties are correct that the Seventh Circuit has not addressed the issue of whether a limitation to one- to two-step tasks is consistent with the Department of Labor's Dictionary of Occupational Titles' (DOT) definition of

Reasoning Development Level 1.[6]  The parties do, however, rely on District Court opinions.  Two in particular are worth discussion here.

In *Schlattman v Colvin*, cited by Wetzel, an agency consultant doctor had limited the claimant to one- to two-step tasks, and the doctor's opinion was affirmed by another state agency mental health consultant.  2014 WL 185009, *6 (ND Ill).  In the ALJ's RFC finding and questions posed to the VE, the ALJ did not include a limitation to one- to two-step tasks.  Id.  The District Court noted that there was a significant difference between one- to two-step tasks and simple, routine, repetitive tasks.  Id at *7.  The Court further detailed how DOT Reasoning Level 1 involved the ability to carry out simple one- or two-step instructions whereas DOT Reasoning Level 2 required the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  Id (internal citations omitted).  All three occupations identified by the VE required a Reasoning Level of 2, and thus the District Court explained that if the doctor's limitation had been credited and included as part of the ALJ's hypothetical question to the VE, it would have eliminated all occupations cited by the VE and called into question the ALJ's finding that the claimant could perform a significant number of jobs in the national economy."  Id at *7.  The District Court found it significant that the ALJ never explained her reason for disregarding the doctor's proposed limitation.  Id.  The District Court remanded the case for further proceedings after concluding that the ALJ's failure to include a limitation to one- to two-step tasks in her RFC finding and in her questions posed to the VE did not present a logical bridge between the evidence of record and her decision.  Id at *8.

---

[6] The DOT defines Reasoning Development Level 1as the ability to "apply commonsense understanding to carry out simple one- or two-step instructions."  1991 WL 688702.

In *Thompkins v Astrue*, cited by the Commissioner, the parties conceded that the ALJ failed to elicit a reasonable explanation for the conflict between the VE's testimony and the DOT. 2010 WL 5071193, *10 (ND Ill). Specifically, the claimant argued that the ALJ failed to ask the VE to explain the potential conflict between his testimony on "simple" jobs available to the claimant and the DOT Level 2 "detailed" standard those jobs actually required. Id. The Commissioner argued that any error resulting from the ALJ's silence was harmless. Id. The District Court noted that under binding precedent, an ALJ's failure to elicit a reasonable explanation for the conflict between a VE's testimony and the DOT is harmless where the record shows that the claimant could, in fact, perform the job duties the ALJ posed to the VE. Id, citing *Terry*, 580 F3d at 478. The District Court found the reasoning of *Masek v Astrue*, 2010 WL 1050293, *22 (ND Ill), persuasive. The *Masek* court explained that the Social Security regulations and the DOT use "markedly different standards" and thus the *Thompkins* court explained that "no one-to-one parallel can be found between "simple" as it is used under the regulations and the DOT's requirements." *Thompkins*, 2010 WL 5071193, *11, citing *Masek*, 2010 WL 1050293, *22. The District Court rejected the Plaintiff's claim that the VE's Level 2 jobs were fatally inconsistent with the ALJ's instructions. 2010 WL 5071193, *11.

Notably, in *Thompkins*, the parties were not disputing the ALJ's failure to include a limitation for the claimant to one to two-step tasks when questioning the VE. Rather the *Thompkins* court dealt with "simple" versus "detailed" tasks. Id at *10-11. Here, as in *Schlattman*, the ALJ specifically discussed that Dr. Fyans assessed Wetzel with the capability to perform one- to two-step unskilled tasks. The ALJ went on to state that such a restriction was inconsistent with Dr. Fyans's finding of "mild limitations in maintaining concentration, persistence or pace and [finding] moderate restriction in this domain." (AR 72-73). Thus, the ALJ

cited Dr. Fyans's assessment of Wetzel to one- to two-step unskilled tasks and used that assessment in finding moderate rather than mild limitations in Wetzel's ability to maintain concentration, persistence or pace. Nevertheless, the ALJ did not include the one- to two-step limitation in his RFC, nor did he include that limitation in his questions to VE Malik.

The facts of *Schlattman* are more similar to those here than the facts of *Thompkins*, and so the analysis in *Schlattman* is more persuasive. Moreover, the reasoning in Schlattman is more persuasive as it is in line with the firmly established precedent in Social Security cases which provides that an ALJ must build a logical bridge from the evidence to his conclusion. *Murphy*, 759 F3d at 815; *Schmidt*, 395 F3d at 744. Just as in *Schlattman*, the ALJ here never explained his reason for disregarding Dr. Fyans's proposed limitation to one- to two-step tasks; there is no indication of whether he inadvertently or purposefully omitted the limitation. Therefore here, just as in *Schlattman*, because there is no language to the effect of whether the omission was inadvertent or intentional, there is "no logical bridge that allows this Court to determine whether the failure to include the limitation was a conscious decision or a lapse in judgment." Id at *8.

Significantly, the DOT Reasoning Level 1 provides, "Apply commonsense understanding to carry out simple *one- or two-step instructions*. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." 1991 WL 688702 (emphasis added). The Court cannot say that the ALJ's failure to include the one- to two-step limitation was harmless error where two of the three jobs identified by VE Malik available to Wetzel require second level reasoning. See 1991 WL 672348 (Cutter-and-Paster, Press Clippings); 1991 WL 646421 (Taper, Printed Circuit Layout). The flaw in the Commissioner's argument that the ALJ could properly rely on VE Malik's testimony as substantial evidence in finding that Wetzel was capable of

performing a significant number of jobs found in the national economy is that VE Malik was only presented with the ALJ's RFC which did not include an express limitation to one- to two-step tasks.

## D

Wetzel's final argument is that the ALJ erred in mechanically applying the age categories in determining that Wetzel was a younger individual prior to December 17, 2011 (his 50th birthday). Wetzel argues that the ALJ did not consider that between January 2010 and December 2011, Wetzel's age placed him in a borderline situation. 20 CFR § 404.1563(b) states:

> How we apply the age categories. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

Wetzel takes issue with the ALJ's failure to proffer a discussion of why he did not determine that Wetzel qualified for the higher age category six or eight or ten months before his 50th birthday. Wetzel contends that had the ALJ determined that because of Wetzel's vocational adversities stemming from his multiple impairments he qualified for the higher age category before his 50th birthday, the regulations would have directed the ALJ to enter a finding that Wetzel was disabled from the earlier date. The Commissioner counters that Wetzel's alleged onset date of January 1, 2010 was almost two years before he reached the older age category and so was well beyond the "few days to a few months of reaching the older category" recognized in the regulations as a "borderline" age situation.

19

The Commissioner also argues that the Hearings, Appeals and Litigation Law Manual (HALLEX), used by the agency to interpret the regulations and provide procedural guidance, does not require an ALJ to explain why the older age category was not used before December 17, 2011.

In his Decision, the ALJ found that, "Prior to the established disability onset date, the claimant was a younger individual age 45-49.  On December 17, 2011, the claimant's age category changed to an individual closely approaching advanced age . . . ."  (AR 74).  The ALJ also found that, "Prior to December 17, 2011, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed . . . ."  (AR 74).  The ALJ then found that, "Beginning on December 17, 2011, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform . . . ."  (AR 75).

Though 20 CFR § 404.1563(b) provides that, "We will not apply the age categories mechanically in a borderline situation," and though the ALJ in this case identified that Wetzel's age category changed from a younger individual to an individual closely approaching advanced age during the time under review, the ALJ included no discussion whatsoever as to his application of the age categories.  While the HALLEX may provide that an adjudicator does not need to explain his or her use of the claimant's chronological age, the ALJ's decision can only be sustained if supported by substantial evidence.  42 USC § 405(g).  Here, after considering all of the medical and non-medical evidence and all of the testimony, the ALJ concluded that prior to Wetzel's 50th birthday on December 17, 2011 he was not disabled.  On December 17, 2011, all of the evidence

remained the same except for the fact that Wetzel turned 50 years old. At some point during the period under review, Wetzel found himself in a borderline age situation. Yet the ALJ included no discussion as to whether he considered Wetzel's borderline age. The ALJ's Decision thus shows only a mechanical application of the age categories, and one which was determinative on the question of disability. That mechanical application precludes the Court from finding substantial evidence supports the ALJ's age determination. The mechanical application equates to no explanation which precludes the Court from identifying what evidence the ALJ used to make his finding regarding Wetzel's age. Ultimately, the ALJ's error in failing to discuss his use of Wetzel's chronological age was not harmless, as it was the ALJ's use of Wetzel's chronological age which prompted a finding of no disability before December 17, 2011.

## V

The Court is mindful that "administrative error may be harmless," *McKinzey v Astrue*, 641 F.3d 884, 892 (7th Cir 2011) and that the Court ought not remand a case to the ALJ where it is convinced that the ALJ will reach the same result. Id. The Court has already concluded that the ALJ erred and is not convinced that, upon a more detailed explanation of Axvig's and Dr. Kent's opinions, an inclusion of the one- to two-step task limitation, and an explanation of Wetzel's borderline age situation (or an explanation for why he did not consider this a borderline age case), the ALJ would not make a different disability determination. The record evidence does not necessarily compel a determination that Wetzel should be awarded benefits – only that the ALJ has not adequately supported his conclusions in the particular areas identified *supra*.

**VI**

For the reasons set forth above, the Court recommends that the Plaintiff's Motion for Summary Judgment (Doc. 11) be granted and the Commissioner's Motion for Summary Affirmance (Doc. 16) be denied.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) working days after service of this Report and Recommendation. FRCP 72(b)(2); 28 USC § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v Zema Systems Corp*, 170 F3d 734, 739 (7th Cir 1999); *Lorentzen v Anderson Pest Control*, 64 F3d 327, 330 (7th Cir 1995).

Entered on February 2, 2015.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE